DECISION
The Petitioner, a convicted sex offender, was classified by the Sex Offender Review Board ("SORB" or "Board") as a Level 2 risk to re-offend under § 11-37-1 et seq of the Rhode Island General Laws known as the Sex Offender and Community Notification Act. ("Act") Upon receipt of notice of his risk level, he filed a timely objection to same and requested a hearing to review his level of notification. A hearing was conducted by the Court in accordance with § 11-31-1-16 of the Act.
 Facts and Travel
Petitioner was before the Court on March 4, 2004 on charges of two counts of first degree child molestation, and three counts second degree child molestation. He entered a nolo plea to one count of second degree child molestation, received a sentence of 20 years which was suspended, and placed on probation with a condition of probation being sex offender registration and counseling. The remaining charges were dismissed. The defendant had an extensive criminal history dating back to 1980. The child molestation charge involved a seven year old female victim. The sexual contact took place over a one to two year period.
As a result of his plea and subsequent conviction, in addition to sex offender counseling and registration, he was referred to the Sex Offenders Review Board ("SORB"), and was determined to be a risk Level 2 or moderate risk to re-offend. This risk level requires in addition to the registration required, that organizations in the community likely to encounter the petitioner be notified of his presence. The Petitioner objected to his classification and requested a hearing.
 Standard of Review
In any proceeding under R.I.G.L. § 11-37.1 entitled Sexual Offender Registration and Community Notification Act, the State has the burden of presenting a prima facie case that justifies the proposed level and manner of notification.
The statute defines a prima facie case to mean (1) a validated risk assessment tool has been used to determine the risk of re-offense; and (2) reasonable means have been used to collect the information used in the validated assessment tool.
Upon presentation of a prima facie case, the Court shall affirm the determination of the level and nature of the community notification, unless it is persuaded by a preponderance of the evidence that the determination on either the level of notification or the manner in which it is proposed to be accomplished is not in compliance with this chapter and the guidelines adopted pursuant to this chapter.
 Analysis
The State introduced the record of the Sex Offender Review Board which included the results of the Static-99, a valid risk assessment tool as well as additional information including the criminal record of the petitioner, police reports, institutional, probation/parole supervision and treatment information. They also introduced a supplemental report dated 6/28/05, stating additional factors and/or characteristics of the petitioner which the Board considered in classifying the petitioner as a Level 2 risk. The Board considered the nature of the offense, — namely an adult offender targeting a child victim, repetitive sexual aggressive behavior involving separate incidents with the same victim, a criminal record of violence and hostility including assault with a knife, Breaking Entering and substantive related offenses. On the risk assessment tool, the Petitioner scored a 2 which shows him as a low to moderate risk to re-offend.
After reviewing the risk assessment tool and other documentation, the Court found that the state established a prima face case. The Petitioner was afforded an opportunity to persuade the Court that the level of notification established by the Board and the manner of notification was not in compliance with the statute.
The defendant presented James Moody ("Moody") who appeared in response to a subpoena. Moody is presently treating the Petitioner at New Dimensions for Men and was at the time of his testimony a member of the SORB that classified the Petitioner. Moody, according to a report dated 6/28/05, failed to recuse himself from the classification vote despite the fact he was providing treatment.[1]
Moody testified that he has been treating the Petitioner for two years. He indicated that from what he (Moody) observed and what the Petitioner has reported, the Petitioner controls himself well. He stated that the Petitioner has "done what has to be done," insofar as his treatment and then qualified this statement by saying: "He has to be there — he is court ordered." According to Moody, the Petitioner has been placed in a "Deniers Group" "wherein relapse prevention is the course of treatment" The treatment involves "avoiding children, avoid alcohol — intense supervision." Furthermore the Petitioner "should stay away from schools, places like the YMCA, etc." While Moody testified he has no quarrel with the scoring of 2 on the Static 99 risk assessment, he stated "lowering Petitioner's risk to a Level 1 would not present a risk to the community. This opinion contradicts the finding of the SORB dated 6/28/05 in which Moody participated and failed to file a dissent.[2]
The SORB considered the results of the Static 99 risk assessment tool and reviewed police reports, BCI reports and other documents in making its assessment. They considered other factors including termination from the sex offender program, Petitioner's lengthy criminal record, institutional disciplinary records, in addition to his risk assessment tool score of 2 which placed the Petitioner at the low to moderate risk to re-offend.
The Court, having found a prima facie case had been established, is not persuaded by a preponderance of the evidence that the determination on either the level of notification or the manner in which it is imposed was not in compliance with R.I.G.L. § 11-37.1-16. The testimony of defendant's expert witness supported notification to the community when he stated Petitioner should avoid children, organizations, etc.
 Conclusion
Based on the foregoing, the decision of the SORB classifying Petitioner as a Level 2 is confirmed. The risk of re-offending is moderate and in addition to registration and notification, the organizations in the community and members of the public likely to encounter petitioner should be notified.
[1] Moody, as a member of the SORB should recuse himself from all matters involving defendants whose cases are considered by the SORB wherein he is involved in treatment of the defendant. Recusal should act as a bar to any involvement in the case including submission of written reports and testimony at hearings.
[2] Moody is a member of the SORB pursuant to R.I.G.L. § 11-3-7.1-6 which states
"At least one member of the SORB shall be a sex offender treatment specialist." While Moody and Peter Loss, another member of the Board, possess this qualification they should not vote on cases wherein the convicted sex offender is a client or enrolled n any programs involving them. Furthermore, recusal should apply to any written or testimonial communications on behalf of petitioner either supporting or contradicting the Board's findings.
This recusal also raises another issue when recusal takes place — namely is the Board, in voting on a convicted sex offender, legally constituted when it lacks a qualified sex offender treatment specialist.
Finally, since they are involved in treatment of a large number of sex offenders who appear before the Board they should decline or reconsider the appointment to serve on the Board.